# CIRCUIT COURT OF THE CITY OF RICHMOND

Geraldine Hobson

v.

United Companies Lending Corp.

Case No. HE-530-3

William Jones

v.

United Companies Lending Corp.

Case No. HE-1192-3

March 21, 1997

BY JUDGE T. J. MARKOW

These consolidated cases are before the court on Defendant's Motion for Summary Judgment. Plaintiffs have filed claims under the Virginia usury statute, the Federal Truth in Lending Act, and common law fraud. Plaintiffs have requested and received a nonsuit on the common law fraud claim. This summary judgment motion is only in reference to the claim under the Virginia usury statute.

Defendant made a loan to Plaintiffs, which was secured by a mortgage on Plaintiff Hobson's house. Jones was a cosigner on the note. The loan was to be repaid by Plaintiffs at 14% interest. There were also fees charged by Defendant, at least one of which was later discovered to have been overcharged in error. Some of the proceeds from the loan were to be used to pay off the prior mortgage on the house, the intention being to leave Defendant as the first lienholder on the property.

The loan was closed and interest began to accrue. After the statutorily mandated waiting period, Defendant issued a check to the settlement attorney

made payable to the prior lienholder, Essex Insurance Company. The settlement attorney forwarded this check to the Essex. In the meantime, Plaintiffs had informed both Essex and Defendant, that Plaintiffs were claiming a right to rescind the Essex lien. Plaintiffs requested that Defendant retain the money designated to be paid to Essex until the dispute was settled. Defendant did so. Eventually, Plaintiffs' claim against Essex was resolved in favor of Essex. At this point, the money Defendant was holding was no longer enough to pay off the original lien because of interest accrued subsequent to closing. Plaintiffs, therefore, added an amount to the check issued by Defendant and satisfied the Essex loan.

Plaintiffs are now in default on defendant's loan. They seek to have the loan declared as usurious, striking the entitlement to interest on the part of Defendant. Defendant has filed for summary judgment on this claim based on its claim that the Virginia usury law has been preempted by the federal statute at 12 U.S.C. § 1735f-7a(a)(1).

For Defendant to prevail on this motion, the federal statute must preempt the state provision, the loan in this case must fall within the federal statute, and Virginia must not have opted out of the federal preemption scheme. As the court finds that each of these requirements is met, summary judgment shall be granted in favor of the defendant.

The parties agree that, generally, the federal statute preempts the state usury law (with the exception of the opt out argument to be discussed below). The disagreement begins with the question of whether this loan fits within the federal statute. This argument centers around one requirement of the federal statute, that the loan involved be secured by a first lien on the property.

There is no dispute that, eventually, the Defendant did hold a first lien. However, Plaintiffs argue that the statute requires the Defendant to have held this first lien from the inception of the loan. Plaintiffs point to the fact that they were paying interest on the loan from the date of closing, but the first lien was not released for some time after that. Therefore, the loan existed for a time period during which Defendant did not hold a first lien. Furthermore, Plaintiffs argue, in the end, the loan was not enough to pay off the prior lien. As such, with Plaintiffs paying out-of-pocket as well, Defendant should not be able to relate the first lien status it eventually acquired, with Plaintiffs' help, back to the inception of the loan.

The court disagrees. Defendant was required by law not to make any payments on the loan for the first three days, to allow a cooling off period for the borrowers. Defendant was entitled to charge interest during this time, not in payment for the loan proceeds, but in payment for the commitment by the Defendant to pay out the proceeds if Plaintiffs did not change their minds

during the cooling off period. Therefore, the loan did not begin at closing. Rather, it began when payments were made. At that time, Defendant did what it was supposed to do — forward a check payable to Essex. It is not the fault of Defendant that the check was not cashed at that point. Had the check been cashed then, the prior lien would have been paid off and Defendant would have had a first lien at the same time as the loan began. Regardless of Essex's failure to cash the check, the old lien became unenforceable when payment was tendered to the prior lienholder. *See* Va. Code § 8.01-147. As such, at the time the check was received by Essex, the loan commenced and Defendant held the first lien on the property.

Plaintiffs argue about the fact that the loan proceeds were not enough to release the prior lien. However, this argument is not persuasive in light of Plaintiffs' own action in delaying the payments. It might have been reasonable on the part of Plaintiffs to request that the money not be paid at that time, but Plaintiffs should bear the costs associated with the decision to do so. Defendants tendered its payoff check as required. It should receive the benefit of having done so.

The final dispute is whether Virginia opted out of the federal preemption scheme. The court finds that Virginia did not. There are two opt out provisions involved in this dispute. The first is found at 12 U.S.C. § 1735f-7a(b)(2). This provision allows states to opt out, but only within a certain time frame, ending in 1983. The Virginia statute in question, Va. Code § 6.1-330.55, was not enacted, as amended and applicable, until 1987. The parties agree that Virginia did not opt out of the federal preemption based on the date.

However, a state may also opt out of the preemption at any time after March 31, 1980, to the extent the state wishes to put limitations on discount points or such other charges. 12 U.S.C. § 1735f-7a(b)(4). Plaintiffs point to the overcharge in fees as being one of these other charges. They then reason that the way such a charge would be calculated would be to amortize the costs over the life of the loan, which, when added to the interest already being charged (14%), would result in a total interest rate over 12%. Twelve percent is the cap in the Virginia statute on which Plaintiffs rely. Therefore, they argue that the Virginia statute is impliedly opting out of the federal preemption as it pertains to such fees, and this would result in the loss by the Defendant of the right to receive any interest.

Assuming Plaintiffs are correct that this overcharge is the type of fee the federal statute refers to, it does not follow that Virginia has "impliedly" opted out of the preemption to the extent of regulating such fees. The plain language of the Virginia statute puts a limit on the amount of interest that may be charged on a loan. This is precisely the kind of statute the federal provision

was intended to preempt. The Virginia statute makes no mention of fees or points or other costs. It deals with the interest rate only. Had the General Assembly intended to opt out to the extent of regulating such costs, it could have done so. The court cannot strain to read such an intent into the plain language as enacted.

Therefore, the court finds that the Plaintiffs' claims under the Virginia usury statute are preempted by the federal law, and summary judgment on that claim shall be ordered on that basis.